10-20509.rr

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-20509-CR-MARTINEZ/BROWN

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

WILLIAM GORDON ISAAC,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**This matter** is before this Court on Defendant William Gordon Isaac's Amended Motion to Suppress Statements & Tangible Evidence Procured in Contravention of the Defendant's United States Constitutional Rights, filed August 2, 2010. The Court has considered the Motion and the Response. In addition, an evidentiary hearing was held on August 11, 2010, at which the Court announced certain findings of fact and conclusions of law. The Court adopts the transcript of that hearing and the findings and conclusions by reference herein.

### Facts

Defendant moves to suppress statements made to United Stated Customs and Border Patrol and DEA agents upon his arrival at Miami International Airport from Lima, Peru, on June 22, 2010.[1]

The Government presented the testimony of U.S. Customs and Border Patrol ("CBP") Officer Ronny Bajana and DEA Special Agent Steven Temprano. Officer Bajana testified that on the date

---

[1] Defendant's Motion also requests the suppression of "tangible evidence which was obtained in connection with these statements." Mot. p. 1.

in question, upon instructions from his command center that Defendant was a possible drug carrier, he and two other officers apprehended Defendant as he was coming out of the gate on arrival from Lima, Peru, and advised Defendant that he would have to accompany them for inspection. The officers were wearing uniforms and had weapons.

The agents escorted Defendant through primary inspection where it was discovered that he had a criminal record and was on supervision, which restricted him from traveling outside of the United States without a letter of permission. Officer Bajana asked Defendant if he had such a letter, Defendant said no, and they tried to contact Defendant's probation officer in California but did not make contact due to the time difference.

Officer Bajana, who had possession of Defendant's passport, airline tickets, customs declaration form and baggage claim tickets escorted Defendant to the baggage claim area to look for his luggage. The luggage was not there, and Officer Bajana told Defendant that he needed to talk to the LAN Airline representative in order to locate it. The LAN agent approached and gave Defendant the form to fill out to claim his luggage, on which Defendant gave his name and a description of the bags, as well as their contents, which Defendant described as "men's clothes and cameras." Officer Bajana testified that he did not direct the LAN representative to give Defendant the form.

Officer Bajana then escorted Defendant to the search room, where they searched his hand bags, and patted him down. He also asked Defendant if he was carrying narcotics. Officer Bajana told Defendant that he needed to speak with DEA Agent Temprano. At no time was Defendant handcuffed or told that he was under arrest.

Agent Temprano testified that on the date in question he received information that authorities in Lima, Peru, had located cocaine in a hidden compartment in luggage which had been checked by

Defendant. Upon arrival at Miami International Airport he encountered Defendant and Officer Bajana standing by the luggage conveyor belts. After Agent Bajana had finished the CBP inspection, Agent Temprano asked Defendant to accompany him to an interview room. Defendant was told that he was being detained until they spoke with his probation officer and checked with the U.S. Attorneys office. There were four agents in the room, and Defendant was not handcuffed at any time during the interview.

Agent Temprano described Defendant as "concerned" but not "stressed out." Agent Temprano introduced himself as a DEA agent and read Defendant his Miranda rights from a warning card. He asked Defendant whether he understood the rights, and Defendant nodded his head and said "yes." The agent asked Defendant if he was willing to talk to him and he again shook his head and answered "yes." Agent Temprano spoke to Defendant for about thirty to forty minutes at which time Defendant made certain statements. Defendant did not invoke his right to remain silent or request an attorney.

At some point close to the end of the interview, Agent Temprano obtained a Miranda rights waiver form and again read Defendant his rights, and Defendant placed his initials, indicating his understanding, on the form. When he asked Defendant to sign the form, Defendant said that he would not sign anything until he spoke with his attorney in California.[2]

Agent Temprano told Defendant that the government would be interested in obtaining any information on his potential buyers in the United States but Defendant said that he didn't have any.[3]

---

[2] Agent Temprano testified that Defendant stated that he learned not to sign anything without talking to a lawyer first during his time in prison.

[3] Agent Temprano initially waivered in his testimony regarding whether this conversation occurred before or after Defendant refused to sign the form, and ultimately stated that it occurred

Agent Temprano testified that Defendant was not free to go at any time during his detention, but there were never any threats or intimidation of Defendant during the interview.

Defendant testified that when he initially arrived at the airport in Miami, he was met by the CBP agents and asked to used the restroom but that request was denied. He further stated that during the entire encounter, he never felt that he was free to leave. Defendant testified that Officer Bajana "directed" him to talk to the LAN agent regarding obtaining his luggage. On direct examination, Defendant denied making a request to locate his bags, but admitted on cross-examination that he wanted his bags back and "did what any passenger would do."

Defendant admitted that Agent Temprano read the Miranda rights to him and that he understood them, and also admitted initialing the rights on the waiver form, but testified that he refused to sign the form and asked for an attorney. Defendant denied making any statements to Agent Temprano regarding the current charges.[4]

## DISCUSSION

Defendant initially argues that his statements and the document he signed regarding his lost luggage should be suppressed because he was in custody and had not yet been given Miranda warnings. Miranda warnings must be given only when a suspect is both in "custody" and subjected to "interrogation." See Illinois v. Perkins, 496 U.S. 292, 297 (1990); United States v. Street, 472 F.3d 1298, 1309 (11th Cir. 2006). "Interrogation" occurs when there is action by law enforcement which is "reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980). An exception is made in border settings for "routine questioning." See United States v. Moya,

---

after. The Court finds that the exact timing is not relevant, however, as further explained *infra*.

[4]The majority of Defendant's testimony involved his claim that any statements he made were regarding his prior cocaine conviction. Although this testimony may be relevant to his guilt or innocence of the current charge, it is irrelevant for purposes of this motion.

4

74 F.3d 1117, 1119-20 (11th Cir. 1996) (explaining that "some degree of questioning and delay is necessary and to be expected at entry points into the United States.")

In Moya, after stating the traditional test of determining whether a person is in custody, that is, whether "under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement ... to such extent that he would not feel free to leave," (citing United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987)), the Court went on to state:

> The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 3151, 82 L.Ed.2d 317 (1984); *Phillips*, 812 F.2d at 1360. But, to be more specific, the Supreme Court has said that whether a suspect is in custody turns on whether restrictions on the suspect's freedom of movement are "of the degree associated with formal arrest." *Minnesota v. Murphy*, 465 U.S. 420, 430, 104 S. Ct. 1136, 1144, 79 L.Ed.2d 409 (1984) (citations omitted). And, under the objective standard, the reasonable person from whose perspective "custody" is defined is a reasonable innocent person. See *Florida v. Bostick*, 501 U.S. 429, 437-38, 111 S. Ct. 2382, 2388, 115 L.Ed.2d 389 (1991). Whether a defendant knows he is guilty and believes incriminating evidence will soon be discovered is irrelevant.

Moya, 74 F.3d at 1119; see also Arizona v. Mauro, 481 U.S. 520, 529 (1987) (stating that "officers do not interrogate a suspect simply by hoping that he will incriminate himself").

In Moya the Court noted that due to the sovereign's responsibility to protect its borders, "questioning at the border must rise to a distinctly accusatory level before it can be said that a reasonable person would feel restraints on his ability to roam to the degree associated with formal arrest." Moya, 74 F.3d at 1120 (internal quotation marks omitted). The Court found the following facts significant in determining that the defendant was not in custody: he was not physically moved or restrained by officers on the way to the secondary interview; no handcuffs were employed and guns were not drawn; the defendant was not booked or told of formal accusations, nor told that he was under arrest; defendant did not ask to leave and the Inspector did not communicate to defendant

that he was not free to do so; and the defendant made no admissions during the interview that would have led a reasonable person in his place to conclude that he would be arrested immediately. 74 F.3d at 1119; see also United States v. McDowell, 250 F.3d 1354 (11th Cir. 2001) (finding four hour inquiry at Port Everglades not a custodial interrogation).

As announced at the hearing, the Court finds that Miranda warnings were not required prior to the time that they were actually given, in that at no time prior thereto was Defendant subject to custodial interrogation. Defendant was not handcuffed, he was allowed to freely communicate with the LAN representative, no threats were made, and there was no coercion. Moreover, the Court finds by Defendant's own testimony that he wanted to get his luggage back, and voluntarily filled out the LAN lost luggage form, which, Defendant stated, was what any other passenger would do.

The Court further finds that Defendant's waiver of his rights was intelligent, knowing and voluntary, as indicated by verbal acknowledgment of his understanding, as well as the initials placed in the Miranda waiver form.

> In *Miranda* [*v. Arizona,* 384 U.S. 436, 444 (1966)], the Supreme Court held that the government may not use statements stemming from the custodial interrogation of a criminal defendant unless the government demonstrates that is used procedural safeguards to ensure the privilege against self-incrimination remains intact. 384 U.S at 444, 86 S. Ct. 1602. In particular, a defendant may waive his right against self-incrimination only if he does so "voluntarily, knowingly and intelligently." Id. A defendant's waiver of his *Miranda* rights is voluntary, knowing and intelligent if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 106 S. Ct. 1135, 89 L.Ed.2d 410 (1986). A written waiver "is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L.Ed.2d 286 (1979).

United States v. Beckles, 565 F.3d 832, 839-40 (2009), cert. denied, 130 S. Ct. 272 (2009).

Defendant is a mature individual with prior experience with the criminal justice system, and has the intelligence to understand the rights, as demonstrated by his testimony before this Court.

Finally, the Court finds that Defendant never unequivocally invoked his right to counsel, but rather limited his request to not signing the Miranda waiver form without the advice of counsel. It is "well settled that law enforcement officers have no duty to stop an interrogation where the suspect's invocation of either of those rights [to silence and counsel] is equivocal." United States v. Acosta, 363 F.3d 1141, 1153-54 (11th cir. 2004); see also Berghuis v. Thompkins, 130 S. Ct. 2250, 2259-60 (2010). Moreover, a refusal to sign a written waiver of rights form is not an invocation of rights. See Acosta, 363 at 1153-54 (citations omitted).

### Recommendation

Accordingly, the Court respectfully recommends that Defendant's Amended Motion to Suppress Statements & Tangible Evidence Procured in Contravention of the Defendant's United States Constitutional Rights be **DENIED**.

The parties have through and including Tuesday, August 17, 2010 within which to serve and file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745(11th Cir.1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this 12th day of August, 2010 at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE

cc: Honorable Jose E. Martinez
counsel of record